UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEDRICK JEFFREY HARDY, SR.,

    Plaintiff,

    v.

WEXFORD HEALTH SOURCES, INC.;
SALVADOR GODINEZ; MARCUS HARDY;
PARTHA GHOSH; IMHOTEP CARTER;
RONALD SCHAEFER; SALEH OBAISI;
RICHARD SHUTE; ARTHUR FUNK,,

    Defendants.

No. 12 C 6554

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Nedrick J. Hardy, Sr., an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that IDOC staff and medical service providers were deliberately indifferent to his medical needs in violation of the Eighth Amendment (Count I), and intentionally inflicted emotional distress upon him in violation of Illinois law (Count II), while he was incarcerated at Stateville Correctional Center in Crest Hill, Illinois. *See* R. 121.[1] Hardy filed an amended complaint on October 6, 2014. *See* R. 85. Defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) on November 5 and 6, 2014, R. 91; R. 95, which the Court denied in part and granted in part on April 2, 2015, with leave to replead the dismissed claims. *See* R. 116 (*Hardy v. Wexford Health Sources, Inc.*, 2015 WL 1593597 (N.D.

---

[1] Since May 21, 2014, Hardy has been incarcerated at Menard Correctional Center in Menard, Illinois. R. 121 ¶ 5.

Ill. Apr. 2, 2015)) (the "April 2 Order"). Hardy filed a second amended complaint on May 5, 2015, R. 121, and Defendants now move to dismiss that complaint under Rule 12(b)(6). R. 124. At a hearing on August 5, 2015, the Court granted Defendants' motion in part, and denied it in part. *See* R. 135. This opinion and order further explains the Court's reasons for that decision.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678). In applying this

2

standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Analysis

In the April 2 Order addressing Hardy's first amended complaint the Court included a detailed discussion of Hardy's allegations, which the Court will not repeat here. *See* R. 116 at 3-10 (*Hardy*, 2015 WL 1593597, at *2-5). The Court will address the new allegations Hardy makes in his second amended complaint in the course of the following analysis.

**Count I – Deliberate Indifference**

    **A.    Wexford's Alleged Failure to Train, Failure to Provide Adequate Staffing, and Failure to Provide Adequate Prescription Medication Refills**

The Court dismissed Hardy's claims against Wexford for a failure to train and failure to staff because he failed to allege "what training or staffing was lacking and how that deficiency impacted Hardy's health or that of his fellow inmates." R. 116 at 34 (*Hardy*, 2015 WL 1593597, at *14). Hardy has re-alleged these claims to include allegations that Wexford's policies prevent inmates from receiving their medication because a prescribing doctor is only available once a week, and Wexford only permits medication refills to be ordered when an inmate has enough medication left for seven days or less. *See* R. 121 ¶¶ 67-68. These allegations may plausibly demonstrate a lack of staffing, but, as the Court also held in its April 2 Order with respect to Hardy's first amended complaint, Hardy's second amended complaint still fails to sufficiently allege that he was harmed by these policies.

3

Hardy's allegations that he was denied "access to mental health care and medication," R. 121 ¶ 76, and that "the nursing staff was denying him mental health medication," *id.* ¶ 79, are not enough. His allegation that he did not have "access" to mental health care and medication is not plausible as Hardy alleges that a mental health professional visited the prison once a week. Although it is plausible that the confluence of the mental health professional's schedule and the medication refill policy may have hypothetically left an inmate without sufficient medication, Hardy does not allege that this actually ever happened to him. Additionally, Hardy's allegation that certain nurses denied him medication by itself is not evidence of a Wexford or Stateville policy.

If Hardy was pro se, the Court might be more inclined to give Hardy the benefit of the doubt and deny Defendants' motion to dismiss on these claims. But the Court has appointed attorneys from Kirkland & Ellis LLP to represent Hardy. Presumably, if Hardy knew of instances when the mental health care professional's schedule and the medication refill policy worked together to cause him to be without medication, his attorneys would have elicited this information from him and expressly included it in his complaint. They certainly know how to clearly present such an allegation in a complaint. For example, with respect to Stateville's alleged policy of failing to provide mental health care and medication during lockdowns, Hardy expressly alleges the specific time periods when he was denied such care, and the Court denied Defendants' motion to dismiss this claim in its April 2 Order. By contrast, the oblique nature of Hardy's allegations regarding the availability of

mental health care and medication refills during lockdowns indicates that Hardy cannot allege that these policies ever actually caused him to be without his medication.

To be clear, the Court is not necessarily requiring Hardy to know the specific dates that he was denied medication due to the staff scheduling and refill policies. But as the Court held in its prior order, "Wexford cannot adequately respond to this allegation. . . . [unless Hardy] describe[s] when this policy has deprived him (and others) of medication and the harm such deprivations have caused." R. 116 at 36 (*Hardy*, 2015 WL 1593597, at *15). In other words, Hardy must expressly allege that on certain occasions these policies caused him to be without his medication, in order to show that Hardy's allegations about the impact of the alleged policies can be tested. He has not made any such allegation. His general allegation that he has been denied "access" to mental health treatment and medication is insufficient to allege that there were certain days that Hardy did not have medication when he needed it which caused him harm. For these reasons, his claims for inadequate staffing, training, and medication provision are dismissed.

**B. Warden Hardy's, Director Godinez's, Dr. Obaisi's, Dr. Shute's, and Dr. Funk's Alleged Liability for the Failure to Provide Mental Health Medication Therapy during Prison Lockdowns**

In its April 2 Order, the Court dismissed Hardy's claims in his first amended complaint against Warden Hardy and Director Godinez—including his claim that they are responsible for Stateville's alleged policy of failing to provide mental health medication and therapy during lockdowns—because Hardy only alleged that

5

"Warden Hardy and Director Godinez had notice of his medical conditions and treatment from the grievances he filed," but he "fail[ed] to allege the content of the grievances he sent to Warden Hardy and Director Godinez." R. 116 at 17 (*Hardy*, 2015 WL 1593597, at *8). The Court also dismissed this claim against Dr. Obaisi, Dr. Shute, and Dr. Funk because the Court believed that Hardy has failed to allege that they had "knowledge of the policies" or a "role in creating and enforcing them." R. 116 at 20 (*Hardy*, 2015 WL 1593597, at *9).

Hardy has re-alleged claims against these five individuals with respect to the alleged policy preventing Hardy and other inmates from receiving medication and mental health therapy during lockdowns. In his second amended complaint, Hardy has added the allegations that these individuals were "aware of Wexford and Stateville policies regarding the provision of . . . mental health care to prisoners during lockdowns," and that they "had input into creating and/or modifying these policies, but failed to exercise this authority to ensure adequate access to mental health care." R. 121 ¶¶ 91-92, 120-21, 144-45, 161-62; *see id.* ¶¶ 81-82. Hardy alleges that this was true for Dr. Obaisi, Dr. Shute, and Dr. Funk, during the time periods they served as Stateville's medical director. *See id.*

Although these allegations are made "on information and belief" it is entirely plausible that these individuals were aware of Stateville's policies regarding provision of medical care during lockdowns and had the ability to change these policies. Indeed it is their job to be aware of such policies and be involved in their implementation. As the Court held in finding that Hardy had sufficiently stated

6

such a claim against Wexford in his first amended complaint, those individuals or entities who "knew Stateville prevented inmates from accessing medication and therapy during lockdowns and failed to attempt to alter this policy" can be liable for deliberate indifference to Hardy for injuries he suffered as a result of these policies. R. 116 at 38 (*Hardy*, 2015 WL 1593597, at *15). This applies equally to Warden Hardy, Director Godinez, Dr. Obaisi, Dr. Shute, and Dr. Funk. Thus, the claims against them regarding a failure to ensure that Hardy received medication and therapy during lockdowns remain in the case and Defendants' motion to dismiss those claims is denied.

**C.    Dr. Shute's Conduct with respect to Hardy's Finger**

In its April 2 Order, the Court dismissed Hardy's claim against Dr. Shute with respect to Dr. Shute's delay in caring for Hardy's finger, finding that "Hardy does not allege that it caused him additional pain." R. 116 at 27 (*Hardy*, 2015 WL 1593597, at *11). Hardy now alleges in his second amended complaint that the delay in treatment from May 15, 2012 to May 21, 2012, caused him "prolonged and unnecessary pain." R. 121 ¶ 25. This additional conclusory allegation does not cure the deficiency identified by the Court. Hardy alleges that he injured his finger on May 15, 2012, he saw Dr. Shute on May 17, who then ordered that an x-ray should be taken on May 21. The Court must credit Hardy's allegation that his injury was painful. But Hardy's allegations do not explain how the delay exacerbated his pain, or what Dr. Shute should have done in the meantime to address Hardy's pain. This is not the kind of delay that suffices to allege deliberate indifference.

7

Moreover, as Hardy acknowledges, the Court found that he alleged that his finger was not actually broken. *See* R. 116 at 28 (*Hardy*, 2015 WL 1593597, at *12). Hardy contends, however, that he "explicitly alleged that his finger was broken and that four separate doctors remarked as much upon seeing the finger." R. 129 at 8. Hardy argues, further, that the Court must take his allegations in the light most favorable to him and "resolve the dispute in [his] favor." *Id*. But Hardy alleges that the "x-ray revealed degenerative joint disease" not that his finger was broken. R. 121 ¶ 24. Hardy also alleges that he did not again seek medical attention for his finger until more than a year later on July 14, 2013, when he "reinjured" it. *Id*. ¶ 27. Although Hardy alleged that his finger was broken in May 2012, he also alleged that it was not broken. Taken together, all of Hardy's allegations make it implausible that his finger was actually broken in May 2012. Although Hardy has sufficiently alleged that he suffered a painful injury to his finger, he has not alleged that it was the type of injury for which Dr. Shute should have done more than he did. Thus, Hardy's claim for deliberate indifference against Dr. Shute with respect to the care he received for his finger is dismissed.

**D.    Dr. Funk's Conduct with respect to Hardy's Finger**

The Court dismissed Hardy's claim against Dr. Funk because Hardy received adequate care for his injury from Dr. Shute. Hardy argues that his new allegations in his second amended complaint are sufficient to state a claim against Dr. Shute, so the question of Dr. Funk's liability is also re-opened. The Court, however, has found that Hardy's new allegations fail to state a claim with regard to Dr. Shute's

8

conduct, so the Court's previous dismissal of the claims against Dr. Funk with respect to Hardy's finger stands.

F. **Qualified Immunity**

Defendants argue that Dr. Shute, Dr. Funk, and Dr. Obaisi are entitled to qualified immunity with respect to "the complained of medication and lockdown policies." R. 125 at 15. "It is all but certain in this circuit," however, "that private doctors providing medical services to inmates are not entitled to assert qualified immunity." *Ford v. Ghosh,* 2014 WL 4413871, at *9 (N.D.Ill. Sept. 8, 2014) (citing *Currie v. Chhabra,* 728 F.3d 626, 631-32 (7th Cir. 2013)); *see also Awalt v. Marketti*, 74 F. Supp. 3d 909, 932 (N.D. Ill. 2014). Without "definitively decid[ing] the issue," the Seventh Circuit has noted that it finds persuasive the Sixth Circuit's holding, and application of recent Supreme Court precedent, that "a doctor providing psychiatric services to inmates at a state prison is not entitled to assert qualified immunity." *Currie,* 728 F.3d at 632 (citing *McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012)). This is a strong enough statement from the Seventh Circuit for this Court to find that qualified immunity is not available for Dr. Shute, Dr. Funk, and Dr. Obaisi.

In any event, Hardy's right to the medication and therapy he needs to maintain his mental health is "clearly established" such that even if qualified immunity were legally available to the doctors, they are not entitled to it in this case. The Court has found that Hardy has stated a claim with respect to whether Dr. Shute, Dr. Funk, and Dr. Obaisi had the ability to alter Stateville's policy with

9

respect to provision of medication and therapy during lockdowns and whether their failure to take action to change such a policy constitutes deliberate indifference. Wexford contends that "there is no arguable basis to hold that under pre-existing law that 'every like-situated, reasonable [doctor]' clearly knew that the complained of medication and lockdown policies violates the Eighth Amendment." R. 125 at 15. But the "law is clear that deliberate indifference to a serious medical condition is a violation of a clearly established constitutional right." *Bd. v. Farnham*, 394 F.3d 469, 481 (7th Cir. 2005); *see also Hayes v. Snyder*, 546 F.3d 516, 528 (7th Cir. 2008) ("It has been established for decades that prison physicians violate inmates' constitutional rights when they deliberately disregard an inmate's serious medical condition . . . ."). Since the deliberate indifference standard requires *knowledge and disregard of an objectively serious risk*, and qualified immunity protects government officials from civil liability if their conduct does not violate *clearly established constitutional rights of which a reasonable person would have known*, the "analysis of whether the facts (viewed in the plaintiff's favor) establish a constitutional violation and the qualified immunity analysis 'effectively collapse into one.'" *Bishop v. Dart*, 2012 WL 4739101, at *4 (N.D. Ill. Oct. 3, 2012) (quoting *Delgado–Brunet v. Clark,* 93 F.3d 339, 345 (7th Cir. 1996)). On this reasoning, denying a 12(b)(6) motion to dismiss a claim for deliberate indifference precludes a finding of qualified immunity at that stage of the case as well.

Moreover, Defendants do not contest the seriousness of Hardy's mental illnesses. *See* R. 92 at 17-18. Nor could they since the Seventh Circuit has held that

mental illness can be an objectively serious medical condition. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) ("The need for a mental illness to be treated could certainly be considered a serious medical need."). A reasonable doctor or prison official would know that failing to properly treat a mental illness requiring medication and therapy would violate the Eighth Amendment. Thus, qualified immunity is not available to Defendants at this stage of the case.

**Count II - Intentional Infliction of Emotional Distress**

In its April 2 Order, the Court previously dismissed Hardy's claims for intentional infliction of emotional distress against all Defendants but Wexford. The Court declined to dismiss Hardy's claim for intentional infliction of emotional distress against Wexford because Wexford could be responsible for Stateville's policy of denying inmates medication and therapy during lockdowns. R. 116 at 41 (*Hardy*, 2015 WL 1593597, at *16). Such a denial could be considered "outrageous" since inmates like Hardy who suffer from mental illness are "peculiarly susceptible to emotional distress." *Id.*

As explained, the Court has reconsidered its dismissal of Hardy's deliberate indifference claims against Warden Hardy, Director Godinez, Dr. Obaisi, Dr. Shute, and Dr. Funk for their responsibility for this policy as well. Accordingly, for the reasons stated in the Court's April 2 Order concerning the relationship between Hardy's deliberate indifference and intentional infliction of emotional distress claims, Hardy has also stated claims against these individuals for intentional

11

infliction of emotional distress based on their alleged responsibility for the lockdown policy.

Defendants also argue that Hardy's intentional infliction of emotional distress claims should be dismissed because Hardy has not provided a "reasonable and meritorious" affidavit pursuant to 735 ILCS 5/2-622. Section 2-622 provides:

> In any action . . . in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit . . . declaring [that a qualified] health professional . . . has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action . . . .

Defendants primarily rely on a single case applying this statute to an intentional infliction of emotional distress claim in the deliberate indifference context. *See Liebich v. Hardy*, 2014 WL 1395957 (N.D. Ill. Apr. 10, 2014). In *Liebich*, the court dismissed the plaintiff's intentional infliction of emotional distress claim for failure to provide a Section 2-622 certification because it implicated doctors' "decisions regarding whether and how to treat plaintiff [which] necessarily involve medical judgments. . . . likely [requiring plaintiff] to introduce technical medical evidence to explain how plaintiff was treated and the other potential options for care that defendants did not pursue." *Id.* at *1.

The *Liebich* decision does not describe the facts of the case much beyond noting that "technical medical evidence" was necessary. In Hardy's case, however, technical medical evidence is not at issue. Rather, the question relevant to an

intentional infliction of emotional distress claim is whether Defendants' actions are so far beyond the "bounds of decency"—let alone the standard of care relevant to medical malpractice—that "an *average* member of the community" would find them "outrageous." *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010); Doe *v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (emphasis added). A doctor's expertise in describing the application of the relevant standard of care for medical malpractice to the particular facts of the case is not necessary to determine whether an average member of the community would find certain conduct outrageous. Accordingly, at least three courts in this district have held that Section 2-622 is not relevant to claims for intentional infliction of emotional distress or other intentional torts. *See Awalt v. Marketti*, 2012 WL 1161500, at *3 (N.D. Ill. Apr. 9, 2012); *Fox v. Ghosh*, 2010 WL 345899, at *2-3 (N.D. Ill. Jan. 26, 2010); *Barrios v. Sherman Hosp.*, 2006 WL 3754922, at *2 (N.D. Ill. Dec. 15, 2006). This Court will follow suit and will not dismiss Hardy's otherwise well-pled intentional infliction of emotional distress claims for failure to submit a certification pursuant to Section 2-622.

## Conclusion

In accordance with the reasoning in this memorandum opinion and order, and the Court's order of August 5, 2015, R. 135, the following of Hardy's claims are dismissed:

- all claims against Warden Hardy and Director Godinez, with the exceptions noted below;[2]

- all intentional infliction of emotional distress claims against all of the individual defendants, with the exceptions noted below;

- all claims against Dr. Ghosh, with the exception noted below;[3]

- the deliberate indifference claims against Dr. Shute and Dr. Funk concerning their treatment of Hardy's right ring finger;

- the deliberate indifference claim against Dr. Obaisi concerning his treatment of Hardy's difficulty and pain urinating;[4]

- the deliberate indifference claims against Dr. Shute, Dr. Funk, and Dr. Obaisi that they failed to ensure that Hardy received timely mental health care or medication during non-lockdowns; and

- any claims against Wexford regarding a failure to train, a failure to staff, and a failure to provide mental health care or medication during non-lockdowns.

Additionally, the following of Hardy's claims remain:

---

[2] The claims for injunctive relief against Warden Hardy and Director Godinez are stricken by agreement. *See* R. 128.

[3] Hardy concedes that he has not sought to re-allege "any claims against Dr. Ghosh except for the claim that the Court did not dismiss in its April 2 Order." R. 129 at 2 n.1.

[4] Hardy does not address Defendants' arguments that his claim against Dr. Obaisi concerning his treatment of Hardy's difficulty and pain urinating should be dismissed. To the extent Hardy has re-alleged this claim it is dismissed for the reasons stated in the Court's April 2 Order.

- the deliberate indifference claims against Dr. Ghosh, Dr. Schaefer, and Dr. Carter concerning their treatment of Hardy's difficulty and pain urinating;

- the deliberate indifference claims against Dr. Shute, Dr. Funk, and Dr. Obaisi regarding their failures to ensure that Hardy received adequate medical care from other doctors for his difficulty and pain urinating and his right ring finger injury;

- the deliberate indifference claims against Dr. Obaisi concerning his treatment of Hardy's right ring finger; and

- the deliberate indifference and intentional infliction of emotional distress claims against Wexford, Warden Hardy, Director Godinez, Dr. Shute, Dr. Funk, and Dr. Obaisi regarding their failures to ensure that Hardy received timely medication refills and therapy sessions during lockdowns.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 2, 2015